## H. L. CANADY CO. et al. v. McDOUGAL et al.

No. 19272. Opinion Filed Jan. 22, 1929.

Burford, Miley, Hoffman & Burford and A. J. Follens, for petitioners.

Kienzle & Hickok, C. H. Tankersley, Edwin Dabney, Atty. Gen., and Ralph C. Thompson, Asst. Atty. Gen., for respondents.

REID, C. This is a proceeding to review a finding and order of the State Industrial Commission, entered on the 12th day of March, 1928. against the petitioners, H. L. Canady Company and the Southern Surety Company, awarding to W. F. McDougal compensation, and directing the petitioners to pay the said McDougal the sum of $214.-68, and to continue payment of compensation at the rate of $13.85 per week, until otherwise ordered by the Commission.

There is little controversy about the manner in which the accident occurred out of which this claim grows. McDougal was in the employment of H. L. Canady Company, which was operating a ditching machine in the city of Shawnee. As the machine progressed in digging the ditch, the walls of the ditch were secured against caving in by heavy timbers placed every four or five feet against the sides of the ditch and held apart by jack screws. As the ditch was completed, the jacks and braces were removed by taking out the ones farthest from the machine, one at a time. McDougal was engaged in removing these jack screws holding the braces. when the ditch caved in, covering him up with dirt. He was rescued from this condition by his fellow workmen. and carried to the hospital in Shawnee. where he remained for several days for treatment, and thereafter filed his claim with the Industrial Commission for certain internal injuries. fracture of the left cheek bone, and for fracture of his right collar bone, which he claimed interfered permanently with the use of his right arm. Here it might be stated that that injury to the collar bone causing a partial loss of the use of claimant's right arm is one of the main elements for which the Commission allowed compensation.

The first assignment of error presented by this appeal is that there is no competent evidence reasonably tending to support the finding of the Commission. And under this they make the proposition that, as two physicians who were placed on the stand by claimant testified that in their opinion the injury to his collar bone was an old one, and not caused by the accident, no testimony thereafter by the claimant to the effect that this injury was caused by the accident had any probative force upon which the Commission could find that it was so caused, for the reason that claimant could not establish his case by thus impeaching his own witness. To state the proposition abstractly, it is: That a party producing a witness who testifies to a certain material fact, along with other material testimony, is bound by such evidence, and any contrary evidence introduced by him thereafter is immaterial and of no effect to create an issue of fact to be determined by the court or Commission trying the case.

However, our consideration of the foregoing question, and our conclusion thereon as hereinafter stated, must not be understood as an intimation by this court that the technical rules of evidence. as applied in the trial of law and equity causes in the courts of this state, have entire application to hearings before the State Industrial Commission where the rules of procedure, as well as the rules governing the admission of testimony, are more relaxed. And, consequently, the rule attempted to be invoked by petitioners would apply with less reason to proceedings before the Industrial Commission.

The contention of the petitioners is answered adversely in 28 R. C. L. 643, in the following language:

"It is well settled that although a party may not impeach his own witness directly, he may show that the statements made by him are not in fact true, and thus incidentally discredit him. This is true not only where it appears that the witness was innocently mistaken. but even where the evidence may collaterally have the effect of showing that he was generally unworthy of belief. This is one of the exceptions to the general rule that a party cannot impeach his own witness. Indeed. were a party for-

bidden to contradict his own witnesses, every one would be at the mercy of his own witnesses, and if the first witness sworn should swear against him, he would lose the testimony of all the rest, which would be a perversion of justice."

And many authorities are cited supporting the conclusion.

Also we find in the late treatise, Jones, Commentaries on Evidence, vol. 6, p. 4814, the question disposed of in this way:

"The general rule that one may not impeach his own witness must not be understood as implying that the party calling a witness is bound to accept his version of material facts as correct. On the contrary, it is very clear that the one producing a witness may prove material facts by any other competent evidence, even though the effect of such testimony is directly to contradict his own witness: 'And this, not only when it appears that the witness was innocently mistaken, but even where the evidence may collaterally have the effect of showing that he was generally unworthy of belief.' It is immaterial that the effect of such testimony is incidentally to discredit the former witness and to tend to show that he is unworthy of belief. It is immaterial whether the testimony thus adduced shows that the witness was mistaken or whether it shows that he has willfully perverted the facts. The party calling him may question the truth of his statements of fact, either by independent opposing evidence, or by inference or arguments drawn from the testimony of the party himself. The object of the inquiry is not to discredit the witness, but to prove the facts relevant to the controversy; and this should be permitted whatever the incidental result may be upon the credit of any witness. This is now recognized as the settled law, without reference to whether the party calling the witness in question is taken by surprise or not."

Numerous cases from state and federal courts are cited, and our examination of many of them confirms our conclusion that the foregoing texts announce a sound doctrine.

It therefore follows that the other testimony presented by the claimant showing that he received the injury to his collar bone at the time of the accident in the ditch presented a question of fact for the Commission, and its finding in favor of claimant thereon is binding on this court.

The defense of the petitioners is stated in their answer presented in the proceeding before the Industrial Commission in the following language:

"Comes now respondent and insurance carrier, and for answer to claimant's petition herein, alleges and states that the claimant was instructed by his employer that whenever braces were removed, or that he was working in a ditch where braces were to be removed, that he was to get behind the braces that were still in the ditch, and that notwithstanding said instructions the claimant refused and neglected to follow this instruction, and by reason thereof claimant was injured, and that by reason thereof said claimant did not suffer an injury arising out of and in the course of his employment. Wherefore, having fully answered, respondent and insurance carrier pray that an order be entered in this case denying claimant compensation."

The record in this case shows that the petitioners offered testimony that the claimant had been given the instructions stated in the answer, that he failed to obey such instructions, and that if the same had been obeyed by the claimant, he would not have received the injury. The petitioners were not permitted to make this proof on the grounds, as stated by the Commissioner hearing the case, that contributory negligence was not a defense, and that this testimony would go to establish contributory negligence, and that there was no allegation of willfulness of conduct. It is our conclusion that the holding of the Commissioner in this respect was not error.

Section 7285, C. O. S. 1921, provides:

"Every employer subject to the provisions of this act shall pay, or provide as required by this act, compensation according to the schedules of this article for the disability of his employee resulting from an accidental personal injury sustained 'y the employee arising out of and in the course of his employment, without regard to fault as a cause of such injury, except where the injury is occasioned by the willful intention of the injured employee to bring about injury to himself or of another." (Emphasis ours.)

The petitioners cite the case of Lucky-Kidd Mining Co. v. State Industrial Commission, 110 Okla. 27, 236 Pac. 600, as sustaining their contention that the proffered testimony tended to establish a defense to the claim. In that case, the claimant had left the place and performance of his duty which was required by the terms of his employment. He had placed another employee in charge of his duty, and gone on an independent mission of his own business, and was hurt in returning to his work. The court stated the principle of law applicable to that case in the following language:

"It must be conceded that the injury in the instant case occurred 'in the course of his employment,' but this alone is not suf-

ficient to sustain an award of compensation. There must be the concurring fact of its 'arising out of' the employment.

"It arises 'out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. McNicol's Case (Mass.) 102 N. E. 697."

An opinion of this court based entirely upon a different state of facts furnishes no guidance for a decision of this case.

The proof is uncontradicted in this case that the claimant, at the time of his injury, was doing his duty at the place required of him in such employment. He was engaged in removing the jacks used in holding the supports in place which held the walls of the ditch. The contention of petitioners is that he failed, immediately upon removing the jack screw, to get behind the next support instead of in front of it. Certainly it cannot be said that, under the circumstances, there was no causal connection between the conditions under which the work was required to be performed and the resulting injury. The proffered testimony would only have tended to show contributory negligence, and not that the injury sustained by the claimant did not arise out of and in the course of his employment.

Having concluded adversely to the contentions presented by the petitioners, it follows that the finding and judgment of the Industrial Commission herein should be and is hereby affirmed.

BENNETT, TEEHEE, LEACH, and HERR, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 28 R. C. L. p. 643; 3 R. C. L. Supp. p. 1589; 6 R. C. L. Supp. p. 1737. See "Evidence," 23 C. J. §1793, p. 50, n. 59; "Witnesses," 40 Cyc. p. 2766, n. 23; "Workmen's Compensation Acts"—C. J. §113, p. 115, n. 32.