## ATWOOD v. HAYES et al.

No. 18464.  Opinion Filed Oct. 15, 1929.

Earl Bohannon, for plaintiff in error.

Campbell & Ray, for defendant in error Earl H. Sheets.

Benj. Martin, for defendant in error J. E. Hayes.

FOSTER, C. This action was begun in the district court of Muskogee county on September 30, 1925, by Seth B. Atwood, as trustee for himself and several other persons, to recover an amount alleged to be due as rentals under a 99-year lease contract, against J. E. Hayes and Earl H. Sheets, as assignees of said contract, and liable for the rent thereunder.  A judgment before a jury in the district court was rendered in favor of the plaintiff, Seth B. Atwood, as trustee, against J. E. Hayes only

for the amount which the said J. E. Hayes admitted he owed and tendered into court. The plaintiff was denied any relief against the defendant Earl H. Sheets. From this judgment Seth B. Atwood, trustee, prosecutes this appeal. The parties appear as they did in the trial court.

The relief sought against the two defendants involves different questions, and we will consider them separately.

Concerning the judgment against J. E. Hayes, the record and testimony is to the effect that in the year 1911, the plaintiff entered into a 99-year lease contract with one L. M. Bramlette covering certain real estate in the city of Muskogee. The contract provided for a rental of $1,200 a year, payable quarterly in advance. In 1917, the lease was purchased by the defendant Earl H. Sheets, and at the same time an amended contract was entered into, by the terms of which the rental, as prescribed in the original lease, was reduced, the lessee to pay $25 a month for two years, $35 a month for two years thereafter, $50 a month for another two years, and after July 1, 1923, the rent was to be an amount equal to 6 per cent of the valuation of the property to be determined by appraisers selected by the parties. This amended contract provided that, in case the rent, taxes, and other upkeep on the property were not paid on the date when due, the rent should be as provided in the original lease.

Earl H. Sheets assigned his lease in the fall of 1917, to one Poe, who later assigned it to a Mrs. Froebe, who in turn assigned it to J. E. Hayes in June, 1923. At the time Hayes acquired the property, the lessee was apparently paying $50 a month, which continued until in June, 1924. By an agreement between J. E. Hayes and the plaintiff, it was agreed that the rental, as provided for in the amended contract of 1917 should be reduced, and that the lessee, Hayes, should pay as rental $25 a month from June, 1924, until March, 1925, and thereafter to pay the sum of $50 a month. Numerous letters were introduced by both parties concerning this agreement, but it seems undisputed that such an agreement was made. Hayes, however, did not pay all of the rent as provided by the agreement last above mentioned, and did not pay all the taxes. At times plaintiff would pay the taxes and Hayes would repay him. A large amount of correspondence was introduced in which the plaintiff was continuously trying to get Hayes to keep up the payments made as agreed, but the letters indicated that the agreement between them was made as last above set out.

On September 30, 1925, this action was begun, it being alleged that Hayes had defaulted in the payment of the rent as provided for in the amended agreement, and therefore the rent as provided in the original agreement was due, and that Hayes had defaulted in his quarterly payments as provided in the original lease, and there was then due on the quarterly payment of August 15, 1924, the sum of $150, and the quarterly payment due November 15, 1924, $300, and $300 for each quarter thereafter.

From the testimony it appears that even, under the amended agreement, and the agreement as contained in the letters between plaintiff and Hayes, no rent had been paid on the property after October 1, 1924, and the paving tax due September 1, 1925, had not been paid.

After the suit was filed, the defendant J. E. Hayes tendered into court the amount of rent which was due pursuant to the letters exchanged between the parties, to wit, on a basis of $25 a month from June, 1924, to March, 1925, and $50 a month thereafter; and it was for the amount so tendered that the jury returned its verdict in favor of the plaintiff, and the court approved the verdict, granted judgment therefor, and made a further order that all rents upon the premises should thereafter be $50 per month.

For a reversal of this judgment, the plaintiff contends that there is a total want of any consideration for the alleged agreement on the part of the plaintiff to accept a lesser rental than that provided for in the original lease and in the contract to amend the same.

To support this proposition, the plaintiff relies upon the testimony of the defendant J. E. Hayes, himself, in which he testified, in substance, that there was no money consideration; that the only reason for the agreement between him and plaintiff that the rent should be reduced to a lesser amount than that contained in the original contract, or in the amended contract of 1917, was that he continue to pay the rent, and that he and plaintiff agreed that the original rent was too high, owing to the fact that there had been a very decided business depression in the city of Muskogee, and that the rent as prescribed in the original contract or in the amendment thereto was exorbitant.

Plaintiff contends that a gratuitous promise by a lessor to accept from a lessee, in possession of leased premises under a lease for a term of years, an amount less than the sum provided by the lease, is without

consideration and will not be enforced. To support this general proposition, the plaintiff relies, first, upon Tiffany on Landlord and Tenant, and upon many cases cited in his brief where the general proposition that a mere promise of a lessee not to give up a lease, provided the rent is reduced, is not a sufficient consideration, since the tenant has no right to give up the lease.

Plaintiff contends that the acceptance by the landlord of a lower rent than that specified in the lease is not sufficient to establish a change in the lease so as to affect the amount of rents due in the future, although it would work a settlement for the rents accruing during the period for which the lower rent was accepted.

From an examination of all the cases cited by the plaintiff, we find they are based upon a parol promise by the lessor to accept a lesser rent than that provided in the original contract. But we recognize that any contract, whether it be parol or in writing, must be supported by some consideration.

Section 5081, C. O. S. 1921, provides that a written contract may be modified by another contract in writing, but such written modification must have a consideration to support it.

Many of the cases seem to make a distinction between an agreement on behalf of the lessee not to give up the premises if the rent is reduced by the lessor, and an agreement that in consideration of a reduction of the rent, the tenant or lessee agrees to remain in actual occupancy of the property, the distinction being based upon the grounds that the lessee has no authority or right to give up the lease, but does have a right to abandon the premises, and would in that case only be subject to a suit in damages. An agreement to remain in actual occupancy of the property has been held to support a consideration for the reduction of the rent. Doherty v. Doe (Colo.) 33 Pac. 165; Raymond v. Krauskopf (Iowa) 54 N. W. 432; Ten Eyck v. Sleeper (Minn.) 67 N. W. 1026; Tiffany on Landlord and Tenant, p. 1056.

From the cases relied upon by the plaintiff, it would appear that the mere fact that there had been a depression in business, or that the rent was considered too high, would not be a sufficient consideration for the reduction of rent, yet, in all of the cases cited, we find none contrary to the rule that to continue in actual occupancy of the premises is a sufficient consideration.

Was there any agreement in the case at bar that the lessee, Hayes, should continue to occupy the premises on condition that the rent was reduced? We find no direct testimony that would support such a finding. However, it does appear that after the signing of the contract and the amendment thereto, there was a very decided business depression in Muskogee. This seemed to be recognized by both plaintiff and Hayes. It appears to be admitted that the rent, as provided in the orignal contract, was higher than it should be, and we believe from all of these circumstances that a court or jury had a right to assume that the defendant Hayes would discontinue to remain in actual occupancy of the premises unless the rent was reduced, and that this fact was known to the plaintiff at the time the agreement to reduce the rent was made.

Under all the circumstances in this case, and the fact that the agreement to reduce the rent was in writing, as evidenced by letters exchanged between the plaintiff and defendant, which presumes a consideration, we believe that a sufficient consideration is shown for the reduction in rent.

Plaintiff further argues that, although a consideration existed, the agreement to reduce the rent as provided in the original contract and the amendment thereto, did not affect the other provisions of the original contract and amendment, and that upon the failure of the defendant Hayes to pay the rent when due, the plaintiff had a right to rely upon the condition in the amended contract, which provided that upon failure to pay the rent, the amount should be as provided in the original contract; that this particular condition in the amended contract was never waived or affected by the subsequent agreement.

With this contention, however, we cannot agree, for in the plaintiff's letter to J. F. Hayes, dated August 5, 1925, he acknowledges receipt of $75 as rental for the months of June, July, and August, 1924, and insisted upon the rest of the rent being paid; the closing part of the letter being as follows:

"We will charge you 7 per cent. upon the rents commencing last September and the rentals at the rate of $25 per month to be paid March 1st of this year, and the rentals from March of this year at $50 per month, together with 7 per cent. interest upon deferred payments until these rents are received."

It would appear from this letter that about two months before the filing of this action, the plaintiff agreed in writing that the defendant pay him back rent of $25 per month up to March 1, 1925, and $50 per month thereafter, and was charging 7 per

cent. on deferred payments. This would indicate that plaintiff had waived his option or right, if he had one, of collecting under the original contract in case the defendant did not pay the rents when due. It shows that he agreed in writing that the rent should be $50 per month and Hayes should pay 7 per cent. on the deferred payments. We think there is sufficient evidence, at least, to support the judgment of the lower court in so finding.

Plaintiff further contends that, even though there was an agreement as to the rents, still plaintiff could recover the amount sued for because of the condition in the amended contract which provided that in case the taxes were not paid when due, the rentals as provided in the original lease should become effective.

Under the testimony, the taxes had only been due about a month. Plaintiff had before this time allowed the defendant Hayes to pay taxes after they were due. Owing to the fact that the taxes had been due for a very short period, and had been allowed at other times to run over without being paid when due, this would not be a sufficient ground to collect rents as provided in the original contract.

Plaintiff further says that the testimony of J. E. Keaton amounted to prejudicial error. Keaton was allowed to testify that he was the real estate agent who handled the deal when the lease under consideration was assigned from W. F. Froebe or Mrs. Froebe to J. E. Hayes, and that Froebe told him the rent being paid was $50 a month. No authorities are cited to support this contention. It is true that this was hearsay testimony, but it is also admitted in the record that the statements were true, and were established by other evidence. We think if the testimony was objectionable, that it in no way affected the verdict, and would, at best, be only harmless error.

From an examination of the entire record, we believe the judgment against J. E. Hayes is supported by sufficient evidence, and that the trial court committed no reversible error.

The next question involves the liability of Earl H. Sheets. He obtained this lease on June 4, 1917, at which time the amended contract above mentioned was entered into between plaintiff and Sheets. At the same time, Sheets also entered into a separate contract with plaintiff in which he agreed to pay and carry out all the obligations in the original contract as amended. This was a separate and distinct contract from the contract to amend the lease, although dated the same day.

It is therefore the contention of plaintiff that he is entitled to a judgment against Earl H. Sheets for the entire amount of rent found to be due. In other words, a joint judgment against J. E. Hayes and Earl H. Sheets, at least for the amount found to be due against Hayes, if not for the entire amount prescribed in the original contract.

As a defense to this contention on behalf of the plaintiff, the defendant, Earl Sheets, says that, at the time of this transaction, in 1917, when the contract to amend the lease was entered into, and when he entered into the contract by the terms of which he assumed all the obligations under the original lease as amended, the plaintiff, Seth B. Atwood, delivered to him a letter duly signed, but not acknowledged, in which he (plaintiff) agreed that this defendant should only be liable for the rents so long as he occupied the premises, and that upon his assigning the lease and delivering possession to some other person, he should be relieved from any further liability. The court and jury found in favor of Sheets, which amounts to a finding that such a letter was actually signed and delivered to Sheets and became a part of the original transaction when he obtained possession of the property and agreed to assume and carry out the obligations of the original lease, as amended.

There is here presented a transaction which is out of the ordinary. It the contract to pay and carry out the obligation had not been entered into, Sheets would have been liable for the rent until he assigned the lease and gave up the property. By the delivery of the letter, the contract to assume was canceled. The parties were placed in the same position as if the contract to assume and carry out the original lease, as amended, had not been made, yet both contracts were made at the same time according to the contention of Sheets. Although out of the ordinary, we know nothing that prevents the parties from doing what is apparently a useless thing. If the letter were actually written and delivered, we think it released Sheets from any liability in this case.

The defendant Earl Sheets testified that this letter was delivered to him at the time he took over the property, and that he made a copy of it, or had his attorney to do so, and delivered the original to Mr. Poe, who purchased the lease from Sheets in the Fall of 1917. Poe testified that he received this letter and delivered it to W. E. Froebe, af-

ter making a copy of it, at the time he (Poe) transferred the property to Mrs. Froebe, wife of the said W. E. Froebe. Both copies were introduced in evidence and are identical. W. E. Froebe testified that he had no recollection of any such document.

Mr. Bostic, the agent who handled the transaction when Sheets acquired possession of the property, testified that he saw the letter, saw plaintiff sign it, and knew its contents, and gave the substance of same.

After W. E. Froebe had denied he had any recollection of such a document, the defendant Sheets and his attorney, Ray, were permitted to testify that they had a conversation with Froebe shortly before the taking of his deposition, in which Froebe told them that he had had the letter and it had been destroyed or lost.

Plaintiff contends that all of this testimony is incompetent, for the reasons: (1) That there was not sufficient proof of the loss of the document so as to justify the introduction of secondary testimony as to its contents; and (2) that the defendant Sheets had no right to impeach his own witness, W. E. Froebe.

In support of the first proposition, plaintiff says that, in order to prove the contents of an instrument alleged to have been lost, there must be a clear showing that the instrument cannot be found, and the person who last had possession of the instrument must be placed on the witness stand, and, in this connection, it is pointed out that the property was never sold to W. E. Froebe, but sold to his wife, and she was not placed upon the witness stand.

Although the defendant Sheets admits in his brief that this letter was traced into the hands of Mrs. Froebe, we do not think that this statement is supported by the record. Poe testified that he delivered the letter to W. E. Froebe, and that he made the assignment of the lease to Mrs. Gertrude Froebe, his wife. We have diligently searched the record and cannot find where this letter was ever delivered to Mrs. Froebe. A subpoena was issued for Mrs. Froebe, but she did not appear and the subpoena was never served. We doubt if sufficient diligence was used to obtain her testimony, but, since the letter was never traced into her possession, we do not think that failure to have her testify would be material.

Sheets, Poe, and Froebe all testified that they have made a diligent search for this letter and cannot find it. They are the only ones who under any theory ever had actual possession of it. Certainly, under the rule contended for by plaintiff, this would be

sufficient to admit of secondary evidence as to its contents. These witnesses testified as to the contents of the letter, with the exception of Froebe, and they each presented a copy of it. Bostic testified as to its contents.

Plaintiff denies that any such letter was ever executed, attempts to show that he was not in Muskogee or Oklahoma at the time of its alleged execution, and substantiates this by the testimony of Mr. Moffatt, his agent, as well as by certain documents from his office in Rockford, Ill., and a diary of his mother showing him to be in Illinois at the time. But this was a question for the jury under proper instructions, and they decided in favor of the defendant Sheets, holding that the letter existed and was a defense to this action, and we think there is sufficient evidence to support the same.

It is also contended that Bostic was permitted to testify as to the contents of the lost letter before evidence of loss of the letter was received. We do not think there is any merit to this contention.

The order in which the testimony is produced in the trial of an action is a matter within the discretion of the trial court, and the fact that a part of the evidence of the contents of a lost instrument was introduced before any evidence that search had been made therefor, is not reversible error in the absence of a showing that the complaining party was injured thereby.

Plaintiff further contends that the testimony of Earl Sheets and his attorney, Ray, which tended to impeach the witness Froebe, was incompetent and prejudicial under the well established rule that a party will not be allowed to impeach his own witness. The defendant Sheets says that he was surprised at the testimony of Froebe, and therefore had a right to introduce impeaching testimony. But the testimony of Froebe was by deposition, and it is rather difficult to understand how he could have been surprised at the time the deposition was presented.

Assuming, without deciding, that Sheets cannot plead surprise, we think that, under the circumstances in this case, it became absolutely necessary that the defendant Sheets present the evidence of Froebe. Where the witness is one whom a party to an action is compelled to call, he may impeach him if his testimony proves adverse. Hildreth v. Aldrich (R. I.) 1 Atl. 249; Aldrich v. Nimons (S. C.) 49 Am. Dec. 53; Jones on Evidence, par. 4802, sec. 2427.

Earl Sheets' whole defense in the case at bar was based upon the contents of this

written instrument; he traced it directly into W. E. Froebe's hands. If he had failed to produce Froebe, then his testimony as to the contents would not have been admissible, because it would be presumed that Froebe still had it and could produce it if called. Sheets presented Froebe's deposition knowing that Froebe denied any knowledge of the letter, but we do not see how Sheets could have escaped presenting the testimony. We think, therefore, that the impeaching evidence was not incompetent.

It is next contended by the plaintiff that the testimony of Pratt, an attorney in Kansas City, was incompetent. Mr. Pratt was permitted to testify for the defendant Sheets that, at the time the lease contract was assigned to Poe in 1917, by the defendant Sheets, Sheets told him he had a letter which relieved him (Sheets) from any liability after he had assigned the lease contract. Plaintiff contends that such a statement is a self-serving declaration and incompetent.

The rule as stated in 22 C. J. p. 230, is as follows:

"A party's testimony may not be corroborated by showing previous self-serving declarations conforming thereto, unless his credibility has been assailed on the ground that his testimony is a recent fabrication, in which case his prior declarations, even of a self-serving character, may be admitted, provided they were made at a time when a motive to misrepresent did not exist."

It appears from the record in this case that, upon the cross-examination of Mr. Sheets, he was asked concerning certain communications which he had with the attorney for the plaintiff shortly before the commencement of this trial, in which communications he made no mention of the letter which he now claims he had.

As the letter in this case is the chief and perhaps the only defense that the defendant Earl Sheets, had to this action, we think this was a direct attack upon the testimony, and was intended, and did tend, to show that his testimony was of recent fabrication and was an attempt to impeach this witness and to discredit his evidence.

We have carefully examined the entire record in this case, and the testimony on many points is very conflicting, but, from a consideration of the entire record, we cannot say that there is no evidence reasonably tending to support the verdict.

Finding no reversible error, the judgment is affirmed.

BENNETT, TEEHEE, LEACH, and REID, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) anno. 43 A. L. R. 1477; 16 R. C. L. p. 924. (2) 10 R. C. L. p. 915; (4) 28 R. C. L. p. 647. See "Appeal and Error," 4 C. J. §2786, p. 816, n. 68. "Evidence," 22 C. J. §1353, p. 1053, n. 37. "Landlord and Tenant," 36 C. J. §1158, p. 347, n. 74. "Lost Instruments," 28 C. J. §27, p. 260, n. 42. "Trial," 38 Cyc. p. 1353, n. 17. "Witnesses," 40 Cyc. p. 2560, n. 70; p. 2789, n. 41.