Ruth HALL, Plaintiff in Error,

v.

ORTHOPEDIC CLINIC, a Co-Partnership,
and National Bank of Tulsa, Executor of
the Estate of Frank A. Stuart, Deceased,
Defendants in Error.

No. 41290.

Supreme Court of Oklahoma.

July 23, 1968.

Paul W. Brightmire, Tulsa, for plaintiff in error.

Houston, Klein & Davidson, by John R. Richards, E. L. Grigg, Tulsa, for defendants in error.

HODGES, Justice.

Plaintiff in error, Ruth Hall, instituted this action abainst the defendants in error, Orthopedic Clinic, a co-partnership, and one of the partners individually, Frank A. Stuart, M.D., to recover damages for a personal injury that allegedly resulted from the negligence of defendant Stuart. Before trial, Dr. Stuart died and the Executor of his Estate, the National Bank of Tulsa, was substituted as party defendant. The parties will be designated as they appeared in the trial court.

Plaintiff, while attempting to step out of a boat, fell and injured her right arm near the elbow. An x-ray taken at the hospital in Miami, Oklahoma disclosed she had broken off the head of the radius bone. Thereafter, plaintiff was placed in a Tulsa hospital where defendant Stuart operated and removed the head of the broken radius bone.

Plaintiff alleged that defendant Stuart carelessly and unnecessarily injured, stretched, bruised, contused, damaged and cut the radial nerve in plaintiff's right arm during surgery, which resulted in her right hand being lame, crippled and paralyzed. Plaintiff allegedly never regained the "extention use" of the fingers in her right hand.

Defendants specifically denied any act of omission or commission that contributed to or caused plaintiff's alleged injuries; and that plaintiff's alleged injuries came about and were the unavoidable result of the accident plaintiff sustained and not because of any act of omission or commission on the part of these defendants.

The cause was tried to a jury which returned a verdict for the defendants. From an order overruling motion for new trial, plaintiff appeals.

This malpractice case involved a complicated and technical application of medical evidence. Plaintiff in an effort to prove her allegations of malpractice, introduced into evidence the deposition of the defendant, who had died prior to trial, and other medical evidence, including the testimony of her own doctor. In many respects, the testimony of the defendant from the deposition was necessary and essential to establish material facts and to lay a foundation for other controverted facts.

In the trial of the case, the trial court took the position that since the plaintiff had introduced the defendant's deposition into evidence that the defendant was her witness. The trial court specifically ruled, in several instances, that the plaintiff's doctor could not testify as to those matters which would impeach the testimony of the defendant. This was error. In Atwood v. Hayes, 139 Okl. 95, 281 P. 259, we held:

"The general rule * * * has no application, if the witness is one whom the party is compelled to call, and, if the testimony is adverse, such witness may be impeached by the party calling him."

As noted above, the deposition of the defendant was vital to plaintiff's case. Before the plaintiff could introduce evidence in support of her cause of action, it was necessary to show the jury what actually

transpired during surgery. The defendant performed the surgery, and he was the only person available to testify as to those matters.

■ In addition to the above ruling, the trial court erroneously instructed the jury as follows:

"You are instructed that when a party to litigation calls a person as a witness, the party calling a person as a witness vouches for his credibility and integrity, and *is thereby bound by the representations and statements made by the witness.*" (Emphasis supplied.)

In a recent opinion by this court in Nye v. Cox, Okl., 440 P.2d 683, we held:

"A party is not concluded by the statement of any witness, but has the right to introduce other competent evidence to show the real facts, although such testimony may incidentally contradict or tend to impeach the testimony of a previous witness. And such latter testimony will create an issue of fact upon which the court or jury trying the case, is authorized to hold adversely to the former testimony. This is the rule without reference to whether the party calling the former witness is taken by surprise or not by his testimony."

In the Nye case, supra, we pointed out that the above rule was well established in this State and cited the following precedents: Glens Falls Insurance Co. v. Johnson, Okl., 403 P.2d 229; Westgate Oil Co. v. McAbee, 181 Okl. 487, 74 P.2d 1150; H. L. Canady Co. v. McDougal, 135 Okl. 63, 273 P. 1000.

The defendant then contends that if the above instruction was error, it was harmless error in view of the other instruction given by the court. We do not agree. The other instructions did not correct the error, and when considered with the above instruction, they were conflicting and contradictory.

■ The instructions must always be considered as a whole, but they must be consistent and harmonious, and where there are conflicting instructions with respect to a material matter, tending to confuse the jury, a new trial must be granted for the reason this court cannot say that the jury did not follow the erroneous instruction. First National Bank of Wetumka v. Nolen, 59 Okl. 20, 157 P. 754; Petroleum Iron Works Co. v. Bullington, 61 Okl. 311, 161 P. 538; City of Tulsa v. Pearson, Okl., 277 P.2d 135.

■ One of the principal questions involved in this case was whether the nerve was divided (interrupted) during surgery, or as a result of boating accident. Counsel in his brief concedes that the conflict in the evidence was great and that the jury had to believe Dr. Stuart when he stated that he had not cut the nerve, or they had to believe the opinion of Dr. R. that the nerve was cut during surgery. This was a proper determination for the jury to decide, but the court by the above instruction has told the jury that the plaintiff is bound by the statements made by Dr. Stuart.

The plaintiff, who was employed in a secretarial capacity, testified that after the accident, but before surgery, she could move her fingers. She stated that after surgery she could not extend her fingers. She added that at the present time this inability is more pronounced then prior to surgery, and to some extent, especially as to her work, disabling. Plaintiff's doctor, Dr. R., testified that due to the location and length of the incision made by the defendant, and due to the fact that plaintiff's disability arose immediately after surgery, when before surgery the fingers could be extended, he was of the opinion that the nerve was divided during the surgery. He stated that the incision was in the wrong place and too long and that the defendant had failed to follow well-known procedures and techniques in removing the head of the radius bone, and as a result, the nerve was interrupted. The defendant admitted that the radial nerve was interrupted, but insisted that it was due primarily to the type of fracture the plaintiff had, and that he had

followed the usual and accepted procedure in performing the surgery. Here again, we see that the jury was called upon to decide between the testimony of the defendant and Dr. R. However, if the jury followed the court's instruction that the plaintiff is *bound* by the statements made by the defendant, then the jury had no choice except to return a verdict in favor of the defendant.

The prejudicial effect of the trial court's instruction is also evidenced by the reliance and emphasis placed upon it in the defendant's closing argument to the jury. After quoting from the testimony of Dr. Stuart that the nerve injury was due primarily from the type of fracture, counsel emphasized, "this is her testimony, introduced before you by her own witness and she is bound by it." Counsel also told the jury, "Mr. B. (plaintiff's attorney) tells you that Dr. Stuart was mistaken. He's his witness. He introduced his testimony to you. He read it to you. And now he tries to come back and say 'what my witness said was not true.'" Later in his argument, counsel further emphasized the purpose and effect of the instruction by saying, "Was negligence proved? No. Here is what the plaintiff proved, that she fell hard and hurt herself. That the x-ray hurt. By her own witness, that she had nerve damage before surgery. That Dr. Stuart did not cut her nerve. * * * What did the Court tell you? Instruction No. 7, you are instructed that when a party to litigation calls a person as a witness, this includes Dr. Frank Stuart, this includes all the others, the party calling a witness, a person as a witness, vouches for the credibility and his integrity and is thereby bound by the representations and statements made by the witness."

We are of the opinion that since the above erroneous instruction affected such a vital issue in the case, together with the erroneous evidentiary rulings as herein noted, that justice demands a reversal for a new trial.

Our attention has also been directed to the direct and cross examination of Dr. R. pertaining to his qualifications as an expert. We find it unnecessary to comment on these contentions, except to caution the parties on retrial to confine their examination to matter of proper inquiry.

Reversed and remanded with instructions to grant plaintiff a new trial.

JACKSON, C. J., and WILLIAMS, BLACKBIRD, LAVENDER and McINERNEY, JJ., concur.