OKLAHOMA COCA-COLA BOTTLING CO. v. NEWTON.

No. 34196.    Nov. 6, 1951.

Rehearing Denied Nov. 20, 1951.

*237 P. 2d 627.*

Rittenhouse, Webster, Hanson & Rittenhouse and Stephen G. Evans, Oklahoma City, for plaintiff in error.

Paul W. Updegraff, Norman, for defendant in error.

HALLEY, V. C. J. I. D. Newton sued Oklahoma Coca-Cola Bottling Company for damages for mental and physical pain and suffering alleged to have been the result of drinking a portion of a bottle of Coca-Cola purchased by him from a vending machine owned and operated by the defendant in the fire station on the south campus of the University of Oklahoma at Norman. It was alleged that the bottle of Coca-Cola was manufactured and bottled by the defendant and by it placed in the vending machine for human consumption. That the bottle of beverage mentioned contained a green fly, which had negligently been allowed to be and remain in said bottle when offered for human consumption, while thus contaminated and unfit for human consumption. Plaintiff further alleged that he became poisoned by drinking the Coca-Cola and suffered severe stomach pains, vomited many times, and became violently ill, and suffered excruciating physical and mental pain, and was still suffering therefrom.

The defendant denied that it was negligent in the manufacture, bottling, and offering for sale of the beverage mentioned, and further denied that plaintiff suffered the injuries alleged. The jury found for the plaintiff in the sum of $400, on which judgment was rendered. We shall refer to the parties as "plaintiff" and "defendant", as they appeared in the trial court.

Defendant contends that the evidence was insufficient to justify submission of the case to the jury, and that the doctrine of "res ipsa loquitur" does not apply to cases of this character. The defendant admits that, as a processor and distributor of a bottled beverage for human consumption, it owed a duty to the plaintiff, as to the public in general, to use due care that the beverage it offered for human consumption contained no harmful or deleterious substance.

Defendant admits that the rule of res ipsa loquitur is a rule of evidence and may only be applied where there is no rebuttal evidence. There is no denial that the doctrine raises a presumption of negligence, and that such implied presumption of negligence may be dispelled by evidence showing that the defendant used proper care and was not guilty of negligence, and that the beverage alleged to have been poisonous was completely under its care and control from the time of its manufacture to the time it reached the hands of the consumer. Unless this doctrine is applicable here, the evidence is lacking in sufficient proof of negligence on the part of the defendant to justify submission of the case to the jury. The two propositions argued by the defendant are so closely related that we shall consider them together. We shall first examine some decisions of this court relative to the doctrine of res ipsa loquitur. In Champlin Refining Co. v. George, 182 Okla. 118, 76 P. 2d 895, this court said in the body of the opinion:

"The maxim res ipsa loquitur was defined by this court in Muskogee Electric Traction Co. v. McIntyre, 37 Okla. 684, 133 P. 213, 215, L.R.A. 1916C, 351, as follows: 'Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.' However, before this doctrine could be invoked it was necessary for plaintiff to establish as preliminary propositions what 'thing' caused the injury and that the 'thing' causing the injury was under the control of the defendant or its servants."

In Pine v. Rizzo, 186 Okla. 35, 96 P. 2d 17, the rule as to when res ipsa loquitur is applicable is announced in the second syllabus as follows:

"Before the doctrine of res ipsa loquitur may be invoked to justify the inference of negligence on the part of the defendant, the plaintiff must prove what caused the damage, and that the 'thing' causing said damage was under the control or management of the defendant or his servants, since the doctrine does not go to the extent of implying that one may, from the mere fact of injury, infer what physical act produced the injury." (Citing Champlin Refining Co. v. George, supra.)

A more recent case is that of Lawton Coca-Cola Bottling Co. v. Shaughnessy, 202 Okla. 610, 216 P. 2d 579. This rule is announced in the syllabus as follows:

"(1) Res ipsa loquitur is a rule of evidence whereby negligence of the alleged wrongdoer may be inferred from the mere fact that the accident happened, provided the character of the accident and the circumstances attending it lead reasonably to the belief that, in the absence of negligence, it would not have occurred, and the thing which caused the injury is shown to have been under the management and control of the alleged wrongdoer.

". . . .

"(3) When a defendant produces evidence to rebut inference of negligence which arises upon application of doctrine of res ipsa loquitur, it is ordinarily a question of fact for trier of facts to determine whether the inference has been dispelled."

The latest case considered by this court appears to be that of Southwest Ice & Dairy Products Co. v. Faulkenberry, 203 Okla. 279, 220 P. 2d 257, 17 A. L. R. 2d 1373. The court had under consideration the rule of res ipsa loquitur, where the facts showed that a dead mouse was found in a bottle of milk which had been processed, bottled and distributed by the defendant for human consumption. The court held that the rule was applicable in that case, and stated in the syllabus:

"(1) A manufacturer or processor of food products under modern conditions impliedly warrants his goods when dispensed in original packages or bottles, and such warranty is available to all who may be damaged by their use in the legitimate channels of trade, including those who purchase them for resale.

" . . .

"(3) The res ipsa loquitur doctrine may be invoked against the bottler of packaged foods when the package comes from the packer or bottler so constructed or sealed that its contents reach the retailer or consumer without possibility of alteration by intermediate parties, and where a foreign substance is found in a bottle of milk so that its physical location therein conclusively demonstrates its presence there when the article came from the packer or bottler, the thing speaks for itself not only as to the negligence of packer or bottler but as to his prima facie responsibility for the resulting injury, and plaintiff need not allege or prove negligence to recover damages."

There are numerous cases cited from other jurisdictions, but we feel that the foregoing decisions by this court are a sufficient pronouncement of the law upon the doctrine of res ipsa loquitur.

There is no question but that the defendant had complete control over the beverage in question from its manufacture to the time plaintiff obtained it from defendant's vending machine. Plaintiff removed the cap and began to drink the contents of the bottle, and upon discovering some substance in his mouth, which he first thought was a piece of cork from the cap, he ejected it into his hand and discovered that it was a green fly. He then replaced the fly in the bottle, recapped the bottle, and kept it in the condition in which he found it until the date of the trial. Plaintiff became violently ill and began to vomit. He went to the office of Dr. Berry in Norman, who testified that plaintiff vomited in front of his office and was "acutely ill." The doctor did not analyze the contents of the bottle or of plaintiff's stomach, but testified that when a fly is put into any solution it emits some type of toxic substance which causes a person drinking the solution to vomit. Several witnesses who were present when the

green fly was discovered by plaintiff testified that plaintiff became immediately ill and vomited profusely. All of them testified that the bottle contained all or part of a fly, green fly, or spider. One witness described it as "an old fly and a bunch of eggs." All those who testified concerning the appearance of the contents of the bottle said that it appeared to be entirely unfit for human consumption, and one said that it looked "terrible."

The defendant contends that it uses the most modern machinery and equipment in its manufacturing processes and the greatest care possible in guarding against the admission of deleterious substances into its beverage; that it uses an "electric eye" in the examination of each bottle to detect any foreign substance, and never knowingly offers for sale any bottle found to contain any substance that might render the beverage unfit for human consumption. At the plant where the bottle in question was purchased, there were bottled about 144,000 bottles each day. It is well known that complicated machinery sometimes errs, as do human beings.

There is no evidence in the record which even suggests that the fly may have appeared in the bottle as the result of a practical joke, or that it was placed there by some competitive salesman. The defendant also suggests that the fly may have entered the bottle after the plaintiff had removed the cap and held the bottle in his hand as he watched a card game, or that the fly may have flown directly into his mouth as he opened it to drink from the bottle. Such things are remotely possible, but highly improbable. The accident happened on May 17th, when flies are known to be in circulation in Oklahoma; but there is no evidence that a single fly was seen in the first station that day. A fly entering one's mouth directly surely would be heard by the recipient. If a live fly enters a bottle, it does not sink at once and give the appearance of decomposition. It does not have the appearance of a fly or other insect having laid "a bunch of eggs." The fly appeared to all who saw it to be a dead fly. They viewed it within a very short time after the plaintiff opened the bottle from which he says the fly came into his mouth. The evidence is overwhelming that the fly was in the bottle when plaintiff opened it and began to drink its contents.

Under the above ruling as to when the doctrine of res ipsa loquitur is applicable, we conclude that the evidence offered by defendant is not sufficient to rebut or dispel the presumption that the defendant offered for public consumption a contaminated bottled beverage. The evidence shows that a green fly was found by plaintiff in a bottle of Coca-Cola manufactured, bottled and dispensed by the defendant, and constantly under its control at all times up to the moment it was taken from defendant's vending machine and uncapped by the plaintiff. The drinking of the beverage clearly resulted in plaintiff's illness and suffering. We conclude that the case was properly submitted to the jury as the trier of the facts. Under the rule announced in the Shaughnessy case, supra, it was only necessary for the plaintiff to show that the contaminated beverage was under the complete control of the defendant during its manufacture, bottling and distribution, up to the time that plaintiff removed the cap and began to drink from the bottle. The time that the beverage was under the control of plaintiff after he removed the cap was so brief that we think the doctrine of res ipsa loquitur is applicable in this case, and the evidence clearly shows that the injuries to the plaintiff were the direct and proximate result of his drinking the contaminated beverage dispensed by defendant.

The judgment is affirmed.

ARNOLD, C.J., and WELCH, CORN, GIBSON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur. DAVISON, J., concurs in result.