Marie R. SKOGSBERG, Plaintiff in Error,

v.

FIRST NATIONAL BANK OF KINGMAN,
KANSAS, Defendant in Error.

No. 41587.

Supreme Court of Oklahoma.

Feb. 27, 1968.

Rehearing Denied April 30, 1968.

**958**

Hudson & Hunter, Oklahoma City, for plaintiff in error.

George B. Spencer, Oklahoma City, Ronald D. Albright, Anthony, Kan., for defendant in error.

JACKSON, Chief Justice.

In the trial court, the plaintiff, the First National Bank of Kingman, Kansas, sued the defendant, Marie Skogsberg, to recover $20,000 plus interest allegedly due upon a promissory note executed by the defendant on February 14, 1962.

In her fourth amended answer, defendant admitted the execution of the note and pleaded the affirmative defenses of failure of consideration and fraud. Verdict and judgment were for plaintiff and defendant appeals.

Plaintiff and defendant were both creditors of Mr. Fred Watts, an oil lease operator and promoter who was later forced into bankruptcy in the United States District Court in Oklahoma City. The money which Mrs. Skogsberg borrowed from the plaintiff bank she immediately loaned to Mr. Watts. He is not a party to this case, and no charge of fraud, or conspiracy to commit fraud, is leveled against him. As a matter of fact, he was produced by Mrs. Skogsberg as her witness, and testified for her, in the trial court.

The fraud upon which Mrs. Skogsberg relies as a defense was allegedly committed by Mr. James Wood, executive vice president of the plaintiff bank. It consisted generally of allegations that he concealed from her the fact that he owned an over-riding royalty interest in some of the Watts Oil leases; that she was misled by Wood as to the nature and extent of Watts' financial difficulties and what would be done with the money she loaned him; that she was told by Wood that the Watts Oil leases were worth about $3,000,000; that she would never be held liable on the note, which would be renewed in 90 days in the name of Watts; and that she would be lending only her "name and credit rating" to Watts in order to enable the bank to make a $20,000 loan it could not otherwise make.

On appeal, defendant does not question the sufficiency of the evidence to support the verdict but argues only questions of law. However, an understanding of the arguments requires a statement of the evidence. Since a verdict in an action of legal cognizance based on conflicting evidence will not be reversed (Complete Auto Transit, Inc. v. Reese, Okl., 425 P.2d 465) in the summary which follows all conflicts are resolved in plaintiff's favor.

The controversy had its background in the efforts of Watts to extricate himself from severe financial difficulties, and the efforts of Mrs. Skogsberg, a woman of some means and business experience, to help him. Watts owned several operating oil leases in Kansas. He met Wood in July, 1961, at which time he sold him an overriding royalty interest in some of the leases. Thereafter he did his banking business with the plaintiff bank, borrowing money from it on several occasions.

Late in 1961 Watts was in financial straits and sold an interest in some of the leases to a man named Grable, taking his check for about $14,000.00. The check was deposited in the Kingman bank and Watts wrote checks against it. Nineteen days later the Grable check was returned unpaid, and

Watts was in an overdraft position at the bank. To cover the overdraft he executed a demand note to the bank on February 10, 1962.

Watts met Mrs. Skogsberg in December, 1961. At that time he was called to the office of Mr. S., Mrs. Skogsberg's "tax man". Mrs. Skogsberg arrived after he got there and discussions were had as to a possible sale of a 49% working interest in the leases to Mrs. Skogsberg for $150,-000.00. An oral agreement was reached and a contract was drafted but never signed. Negotiations between Watts and Mrs. Skogsberg continued thereafter and culminated in a trip to Kingman on February 14, 1962, when Mrs. Skogsberg borrowed $20,-000 from the plaintiff bank and loaned it to Watts. She gave the note sued on to the bank and took one, secured by a mortgage, from Watts.

Watts testified in a deposition that during these negotiations, "I told her about the check that got stopped on me and I didn't have the money that I needed to clear this thing up at the bank and the bank insisted that I do and I said if she would buy the property at a lesser figure and pay me the money at once, I could go ahead and pay the obligations and get this thing all straightened up at one time and she then, in turn, said that right at the minute she wasn't able to do that, but that she would help me make a loan if I wanted to put the property up and she would help me and she could pay it back with the contract". There was also undisputed testimony that Mr. Watts told Mrs. Skogsberg before they went to Kingman that some of his creditors were threatening to file liens against the leases and foreclose them.

There is also evidence that on February 13, 1962, and before Mrs. Skogsberg ever met Mr. Wood, an instrument was drafted in the office of Mrs. Skogsberg's tax man, Mr. S., a Certified Public Accountant, captioned "Substance of Agreement By and Between Mrs. Marie R. Skogsberg and Fred Watts in Connection with Loan of $20,000". This instrument, which was signed by Mrs. Skogsberg either that day in Oklahoma City, or the next day in Kingman, recited that Watts would give Mrs. Skogsberg an option covering a 49% working interest in the Hughes Lease, the Griffith #1 Lease and the Griffith #2 Lease, the purchase price to be $100,000, and the option to remain in force as long as the "note hereinafter mentioned" remained unpaid. Watts agreed to pay the interest on "said note". The only specific description of a note in this instrument was contained in the following language: "Skogsberg agrees to sign note at Kingman, Kansas, to the First National Bank of Kingman in the amount of $20,000 for a term of 90 days * * *". This memorandum of agreement purports to be the substance of an oral agreement already made, drafted, and possibly signed by Mrs. Skogsberg, the day *before* Mr. Wood allegedly made the fraudulent representations which induced her to sign the 90-day note sued on.

Of the $20,000 which Mrs. Skogsberg borrowed from the bank and loaned to Watts, about $14,000 was used by Watts to pay the demand note he had signed to cover his overdraft at the bank. Watts testified at the trial, as a witness for Mrs. Skogsberg, that he was "surprised" when Wood insisted that the note be paid; he said he thought Wood would let him use all of the $20,000 to pay the creditors who were threatening to file liens. His earlier testimony by deposition was that he had told Mrs. Skogsberg about "the check that got stopped on me" and the bank's insistence that he "clear this thing up at the bank".

Wood and Mrs. Skogsberg had never met, or had any contact with each other, before the conference in the bank in Kingman on February 14, 1962, when the note was executed. Before that time, Watts had tried unsuccessfully to raise money on his leases at three different banks in Oklahoma City. The evidence justifies the conclusion that Mrs. Skogsberg knew about these efforts. She testified that one of the banks called her about Watts, and she could not remember whether the other two

did or not. After these unsuccessful efforts, she told Watts that she would help him if he could find a Kansas bank that would handle the transaction. Watts then made arrangements with Wood for the conference of February 14, 1962. He gave Wood the names of the three banks in Oklahoma City and Wood "checked on" Mrs. Skogsberg's credit rating with these banks.

Mrs. Skogsberg and her tax man, Mr. S., went to Kingman together, Mr. Watts driving up in his own automobile. They met at the bank. Mrs. Skogsberg testified that she went with the intention only of *co-signing* a note with Watts; that after they arrived, Wood told her the bank could not accept Watts as a co-signer and that the loan would have to be to her alone. She denied that Wood explained that the bank had already loaned to Watts an amount up the statutory "loan limit" in Kansas (for banks of this size, $20,000). This denial was directly contradicted by the testimony of Wood, who said he told her about the statutory Kansas loan limit. Wood was supported in part by Watts on this point; Watts said that Wood told her that Watts "had money borrowed up there and * * * didn't have that kind of a credit rating". Also, Mrs. Skogsberg's denial that she knew the extent of Watts' indebtedness to the bank was directly contradictory to her own pleadings. In her verified fourth amended answer, upon which issue was joined, she had alleged that on February 14, 1962, Wood falsely represented to her " * * * that the said Fred Watts was already indebted to the bank on notes in the legal amount of $20,000, and, therefore, the bank could not accept another note from said Fred Watts * * *". In addition, her testimony that she intended only to *co-sign* a note with Watts is contradicted by the memorandum of agreement (previously quoted herein) drawn the day before by her accountant and tax man, and which she admitted signing.

Mr. S., Mrs. Skogsberg's accountant and tax man, had worked **for her** for several years. Her first negotiations with Watts were in his office and in his presence and she testified that she had faith in his judgment. He was also present in the bank in Kingman on February 14, 1962, when Mr. Wood is alleged to have made the fraudulent representations which are the basis of Mrs. Skogsberg's defense. According to Wood and Watts, Mrs. Skogsberg conferred with Mr. S. during this conference and had the benefit of his · advice. Although Mrs. Skogsberg indorsed the name of Mr. S. as one of her witnesses at pretrial conference, she did not call him to testify in her behalf. Instead, she testified that, as of one week before trial, he no longer represented her. In this connection, it may be noted that she makes no charge of wrong doing of any kind against Mr. S., and does not charge that Watts and Wood conspired to defraud her. Her charge of fraud is leveled solely at Wood.

On the question of whether Mrs. Skogsberg knew of Wood's ownership of the over-riding royalty, there was testimony that at the time of the first negotiations between Mrs. Skogsberg and Watts, he told her the extent of his ownership of the leases, and there was testimony that the Wood over-riding royalty interest was specifically mentioned in the contract drawn after the oral agreement of Mrs. Skogsberg to purchase an interest in the leases for $150,000. Although this contract was never signed (Mrs. Skogsberg testified merely that she did not accept the proposition *and buy* an interest in the leases) the testimony that the Wood over-ride was mentioned in the contract is undisputed.

Mrs. Skogsberg's testimony gave general support to most of her allegations, but its probative weight was weakened at several pertinent points by such equivocal and uncertain answers as "I don't believe they did", "I can't remember that it was", "I don't think he did", and "I can't remember of him saying why". On the other hand, Mr. Wood, the only witness for plaintiff bank, gave detailed and unequivocal testi-

mony which contradicted that of Mrs. Skogsberg on all pertinent points.

■ In her first proposition on appeal, defendant argues that the court erred in failing to give her requested instruction upon the affirmative defense of failure of consideration. In this connection, the uncontradicted evidence is that at the time she executed the note, Mrs. Skogsberg received a bank money order for $20,000. The fact that she then endorsed it and loaned the proceeds to Mr. Fred Watts, taking his note and mortgage to her, in no way negatives the fact that she did receive a consideration for the note which she gave to the bank. We hold that, since there was no evidence to support the affirmative defense of failure of consideration, the court did not err in refusing to give the requested instruction.

■ Defendant's second proposition is that the court erred in instructing the jury to the general effect that a defrauded party who, after discovery of the fraud, performs any act which recognizes the binding force of the contract, thereby affirms it and waives the right to rely upon fraud as a defense. Defendant's argument is that there was no evidence making this instruction applicable to the issues in this case. We are unable to agree. There was evidence that after the note became past due, defendant attempted to make a partial payment thereon. Her check for $2400.00 was returned to her by the bank because it bore the notation "For Fred Watts Note". Defendant argues in her brief that the notation conclusively shows that she "was attempting to make a payment on a note that she felt was the legal obligation of one Fred Watts and not her own". The record does not support this argument. It shows that she herself testified unequivocally that she intended for it to be applied on the note that she had signed. Other evidence justifies the conclusion that the notation was for her own records, probably to show the connection between the payment and her own $20,000 loan to Watts.

■ In her third proposition, defendant argues that the court erred in instructing the jury that "* * * should you find from a preponderance of the evidence, that the plaintiff made material false representations to the defendant; that the plaintiff *knew* that such representations were false; * * * then your verdict should be for the defendant" (emphasis supplied). She argues in effect that the court should have instructed that a verdict for defendant would have been justified upon a finding that plaintiff's executive vice president made false representations which he *believed* to be true, in accordance with 15 O.S.1961, Sec. 58(2). However, defendant did not plead, and offered no evidence at all tending to prove, that the vice president made false representations which he believed to be true. Defendant's allegations and evidence all concerned allegedly false representations knowingly made, and there was no issue to submit to the jury under 15 O.S.1961, Sec. 58(2). This instruction was fully justified under the facts in this case and other sub-paragraphs of Sec. 58 (the statutory definition of actual fraud) and we hold that the court did not err in giving it.

■ Defendant's last proposition is that the court erred in excluding her negative answer to the following question:

"Mrs. Skogsberg, if James Wood had told you that he was going to take out $13,815 plus interest and the $500 plus interest, would you have signed the note for Mr. Watts?"

Plaintiff objected to the answer as a self-serving declaration and moved that it be stricken. The objection and motion was sustained. In her brief, defendant argues that the objection was not well taken and cites text-book authority for the proposition that the phrase "self-serving statement" ordinarily encompasses only out-of-court statements that are objectionable under the hearsay rule.

The record shows that immediately after the court's ruling, a discussion was had off the record. Thereafter counsel did not re-

962

turn to the subject. The record also shows that Mrs. Skogsberg was permitted to testify fully as to her version of what actually happened before she executed the note. Under these circumstances, we are unable to conclude that the court's ruling, if error, was prejudicial to defendant.

The judgment of the trial court is affirmed.

All the Justices concur.