Elizabeth Ann BOYANTON, as the personal representative and Administratrix of the Estate of Bobby Boyanton; and Elizabeth Ann Boyanton, Individually, Plaintiff–Appellant,

v.

Michael E. REIF, M.D.; and Michael E. Reif, a professional corporation, Defendants–Appellees.

Nos. 68417, 71984.

Supreme Court of Oklahoma.

July 24, 1990.

Rehearing Denied Oct. 9, 1990.

George F. Short, Cynthia L. Sparling, Kevin Driskill, Short, Barnes, Wiggins, Margo & Adler, Oklahoma City, for defendants-appellees.

John Baum, Mark Alan Shores, Baum & Ralstin, Oklahoma City, for plaintiff-appellant.

OPALA, Vice Chief Justice.

The dispositive issue on certiorari is whether the trial court was correct in instructing the jury that the board-certified surgeon-defendant, Dr. Michael E. Reif [Dr. Reif], was charged with possessing and using "ordinary care" and "best judgment" in the treatment of the plaintiff's decedent, Bobby Boyanton [Boyanton].

We answer this question in the affirmative and affirm the trial court's judgment.

## FACTS

Boyanton died after undergoing medical treatment and surgery performed by Dr. Reif. Uncontroverted evidence at trial established Dr. Reif as a board-certified surgeon. Plaintiff alleged that Dr. Reif had negligently failed to diagnose and treat an infection which allegedly had led to the decedent's death. The jury found for Dr. Reif.

At the close of the evidence, the trial judge gave, *inter alia,* Instruction No. 6, whose text was guided by the Oklahoma Uniform Jury Instruction (OUJI–CIV.) 13.-3, and Instruction No. 7 based on OUJI–CIV. 13.4. Instruction No. 6 defines the general duty of physicians to their patients.[1] Instruction No. 7 explains the degree of learning and skill required of a physician who is a specialist.[2] *The sufficiency of the evidence to support the jury verdict for Dr. Reif was not challenged on appeal and is not before us on certiorari.* The *sole* issue for our review is whether there was error in giving Instruction No. 6.

OUJI–CIV. 13.3, from whose text Instruction No. 6 is derived, is entitled "IMPLIED WARRANTY OF CAPACITY AND ABILITY—NONSPECIALIST." OUJI–CIV. 13.4, which is the basis of Instruction

No. 7, is entitled "DUTY OF A SPECIALIST." Plaintiff argues that Instruction No. 6 is intended for use only when the defendant is a non-specialist, and that the instruction should not have been given in this case because the physician was a specialist. The Court of Appeals agreed, reasoning that (a) it was the trial court's duty to instruct only on issues raised by the pleadings and supported by the evidence and (b) that Instruction No. 6 misled the jury as to the defendant's standard of care and hence constitutes a reversible error.

Plaintiff objects in particular to use of the terms "ordinary care" and "best judgment." She contends that a specialist's mistake in judgment should be the equivalent of negligence *per se.* The Court of Appeals also found fault with that portion of Instruction No. 6 which allows the jury to excuse a mistake in the surgeon's judgment.

OUJI–CIV. 13.3 defines the standard of care required of all physicians, whether general practitioner or specialist. This court has approved the use of instructions applying this standard to medical specialists.[3] The standard has not changed since statehood.[4]

■■■ The question in professional malpractice suits is not whether a physician has made a mistake, but whether he has used "ordinary care"—that which is ordi-

---

1. Instruction No. 6 states:

   Unless he states or agrees otherwise, a physician employed to treat a person impliedly warants that he possesses that degree of learning, skill and experience ordinarily possessed by others of his profession practicing in the same field. The physician further impliedly warrants that he will use ordinary care in the exercise of his skill and the application of his knowledge and experience to accomplish the purpose for which he is employed, and that he will use his best judgment in the exercise of his skill in diagnosing the condition and in treating the patient.

   The physician does not warrant a cure and is not responsible for the lack of success unless that lack results from his failure to exercise ordinary care or from his lack of ordinary learning, skill, and experience. If he possesses ordinary learning, skill, and experience and exercises ordinary care in applying same, he is not responsible for mistakes of judgment.

You are instructed that the standard of care required of those engaging in the practice of healing arts within the State of Oklahoma shall be measured by national standards.

2. Instruction No. 7 states:

   A physician who holds himself out to be a specialist in a particular field of medicine owes to his patient the duty of possessing and using that degree of learning and skill ordinarily possessed and used by other specialists of good standing in the same special field under similar circumstances. This is a higher degree of learning and skill than that of a general practitioner.

3. See *Karriman v. Orthopedic Clinic,* Okl., 516 P.2d 534 [1973] (defendant orthopedist).

4. See *Champion v. Keith,* 17 Okl. 204, 87 P. 845, 846 [1906]; *Karriman, supra* note 3 at 540.

narily exercised by his peers.[5] The law's "ordinary care" includes the assumption that the physician will use his "best judgment" in the exercise of his skill. It does not mean that he cannot make mistakes.[6] Because so much of what a medical practitioner does is a matter of opinion he is not responsible for a mistake in judgment unless that mistake is so gross that it makes the professional conduct substandard. Negligence may consist of an error in judgment, but an error in judgment is not necessarily negligence,[7] i.e., substandard professional performance.

■ OUJI–CIV. 13.4 is a *refinement of,* not an *alternative to,* OUJI–CIV. 13.3. OUJI–CIV. 13.3 defines the physician's duty by comparing him to "others of his profession practicing in the same field." OUJI–CIV. 13.4 does nothing more than further define this phrase, in the case of specialist, to mean, "other specialists of good standing in the same special field."

Nothing in the language of OUJI–CIV. 13.4 or in the underlying cases suggests that this instruction was intended to impose strict liability upon physicians who hold themselves out as specialists. Nor is there any suggestion that OUJI–CIV. 13.4 should not be used concurrently with

OUJI–CIV. 13.3 when the defendant-physician is a specialist.[8] To the contrary, while OUJI–CIV. 13.4 addresses the level of learning and skill to be expected, it does not adequately address the degree of care required. Error may arise when the jury does not receive sufficient instructions on the governing degree of care.

Since we find no legal vice in giving the two jury charges, it is indeed our statutory duty to reinstate the trial court's judgment.[9]

Certiorari is granted; the opinion of the Court of Appeals is vacated and the trial court's judgment affirmed.

HARGRAVE, C.J., and HODGES, LAVENDER, SIMMS, DOOLIN and SUMMERS, JJ., concur;

ALMA WILSON and KAUGER, JJ., dissent.

KAUGER, Justice, dissenting:

I agree that strict liability should not be imposed upon physicians who hold themselves out as specialists. I cannot agree that failure to give instructions which make it clear that a specialist is to be held

---

5. Even leaving a sponge in a patient, which establishes negligence by *res ipsa loquitur,* does not negate the physician's defense of having used ordinary care. *Turney v. Anspaugh,* 581 P.2d 1301, 1305 [1978]; *Cassingham v. Berry,* 67 Okl. 134, 150 P. 139, 141 [1915].

6. The plaintiff's position that no mistake can be made when ordinary care is used would render a human being infallible. Even in the exercise of utmost care, all people can and do make mistakes. *Cassingham v. Berry, supra* note 5, 150 P. at 141.

7. *McBride v. Roy,* 177 Okl. 233, 58 P.2d 886, 888 [1936].

8. In *Karriman, supra* note 3, the trial court gave, among others, the following *untitled* instructions:
   1. The equivalent of OUJI–CIV 13.3;
   2. The equivalent of OUJI–CIV 13.4;
   3. An additional instruction that physicians are not responsible for mere want of success absent ordinary care; and
   4. A definition of negligence couched in terms of the "prudent man."

The court held unanimously that because the instructions equivalent to 13.3 and 13.4, plus the additional instruction on ordinary care, adequately defined the doctors' duty as that of a specialist, it was not error to refuse to define negligence in terms of the skill and care of an orthopedic specialist. *Karriman, supra* note 3 at 537–38.

9. 12 O.S. 1981 § 78 and 20 O.S. 1981 § 3001.1.
   § 78 provides:
   The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect.
   § 3001.1 provides:
   No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or for error in any matter of pleading or procedure, unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.

to a higher standard than that of a general practitioner is not error.

## FACTS

The facts outlined in the majority opinion are accurate and succinct, but sparse. A more detailed description of the course of the incidents leading to Bobby Boyanton's (Boyanton) death is appropriate. After falling from a ladder on March 30, 1983, Boyanton was brought to the emergency room at Mercy Hospital. Boyanton suffered from a lacerated liver and a detached gallbladder. The appellee, Michael E. Reif (Reif), performed emergency surgery removing 75% of Boyanton's liver. There are no allegations that the surgery was negligently performed.

Boyanton was given no antibiotics from April 6 through April 20, 1983. During the period before his death, Boyanton displayed a number of classic signs of infection—oscillating fever, elevated white blood cell count,[1] disorientation, and distention in the surgical area. On April 15, Reif noted a yellow or greenish drainage which he testified could have indicated infection. On April 20, the hospital records indicate that the drainage was "foul smelling." Despite these warning signs, no culture to determine the presence or absence of infection was performed by Reif, and no antibiotics were prescribed.[2] A culture was finally ordered on April 20, 1983, which showed pseudomonas, staphylococcus, and streptococcus bacteria. Reif ordered an antibiotic. Because of Boyanton's worsening condition, a second surgery was performed on April 21, 1983. Boyanton died shortly after the second surgery. The autopsy indicated that Boyanton died due to a gangrenous bowel and acute peritonitis. Reif testified that the infection was probably present approximately three to five days before the second surgery was performed.

## GIVING CONFLICTING INSTRUCTIONS ON THE STANDARD OF CARE TO WHICH A PHYSICIAN MAY BE HELD IS REVERSIBLE ERROR.

Although it is undisputed that Reif is a board certified surgeon and the head of surgery at Mercy Hospital and not a general practitioner, two instructions were given to the jury—one relevant to a non-specialist and one relevant to a specialist. Under instruction No. 6, extracted almost verbatim from the Oklahoma Uniform Jury Instructions—Civil (OUJI–CIV) 13.3,[3] the

---

1. Boyanton's blood count ranged from 18,000 to 20,000 white blood cells per cubic millimeter (cu mm). A normal count should be 5,000 to 10,000 white blood cells cu mm. C. Pickney and E. Pickney, *The Patient's Guide to Medical Tests*, p. 379 (3rd Ed. Facts on File 1986).

2. One medical expert testifying on behalf of Boyanton indicated that the combined signs of infection were analogous to smoke being evidence of a fire.

3. Oklahoma Uniform Jury Instructions—OUJI–CIV 13.3 IMPLIED WARRANTY OR CAPACITY AND ABILITY—NON–SPECIALIST provides:
"Unless he states or agrees (contracts) otherwise, a physician employed to treat a person impliedly warrants that he possesses that degree of learning, skill and experience ordinarily possessed by others of his profession practicing in the same or a similar locality at the same time, and that he will use ordinary care in the exercise of his skill and the application of his knowledge and experience to accomplish the purpose for which he is employed, and that he will use his best judgment in the exercise of his skill in diagnosing the condition and in treating the patient. He

does not warrant a cure and is not responsible for the lack of success unless that lack results from his failure to exercise ordinary care or from his lack of ordinary learning, skill and experience. If he possesses ordinary learning, skill and experience, and exercises ordinary care in applying same, he is not responsible for mistakes of judgment."

Jury instruction No. 6 provides:
"Unless he states or agrees otherwise, a physician employed to treat a person impliedly warrants that he possesses that degree of learning, skill and experience ordinarily possessed by others of his profession practicing in the same field. The physician further impliedly warrants that he will use ordinary care in the exercise of his skill and the application of his knowledge and experience to accomplish the purpose for which he is employed, and that he will use his best judgment in the exercise of his skill in diagnosing the condition and in treating the patient.

The physician does not warrant a cure and is not responsible for the lack of success unless that lack results from his failure to exercise ordinary care or from his lack of ordinary learning, skill, and experience. If he possess-

jury was informed that a physician promises to use that degree of skill ordinarily possessed by others of his profession practicing in the same field, and to use ordinary care in the exercise of skill and knowledge. The heading of OUJI–CIV No. 13.3 clearly indicates that it is applicable to a "non-specialist." Under instruction No. 7, which is identical to the OUJI–CIV 13.4,[4] the jury was advised that a medical specialist is held to a higher degree of learning—he/she must exercise that degree of skill and knowledge possessed by other specialists in the same field. This OUJI–CIV instruction is headed "Duty of a Medical Specialist." The jury was given conflicting instructions on the duty owed to the patient—the duty of a "non-specialist" and the duty of a "specialist." The jury instructions did not include the headings to indicate to the jury which instruction was for a non-specialist or a specialist.

Considered as a whole, jury instructions must be consistent and harmonious. When the instructions given are conflicting on a material matter tending to confuse the jury, a new trial must be granted.[5] The test for review of improper instructions is whether there is a probability that jurors were misled and reached a different result than they would have reached but for the

error.[6] Here, the central issue is the standard to which the surgeon is to be held. The jury was given conflicting instructions on the duty owed by Reif to Boyanton. Certainly, the differing instructions could have confused the jury on the issue of the standard to which Reif was to be held— that of a specialist.[7] Apparently, the jurors were misled by the inconsistent instructions. Were Reif held to the proper standard under the facts presented, the jury may well have found for Boyanton on the malpractice charge. Therefore, the cause should be reversed for a new trial.

The majority's reliance upon *Karriman v. Orthopedic Clinic*, 516 P.2d 534, 538 (Okla.1973) and *Runyon v. Reid*, 510 P.2d 943, 950, 58 A.L.R.3d 814, 824 (Okla.1973) for the proposition that this Court has approved instructions equivalent to those given here when the defendants are medical specialists is misplaced. *Karriman* is clearly distinguishable. No application of judicial gloss[8] will justify reliance on *Runyon*.

Unlike the instructions given in the instant cause, the instruction given in *Karriman* specifically provided that the specialist was to be held to the same standard as other specialists.[9] *Runyon* does include

es ordinary learning, skill, and experience and exercises ordinary care in applying same, he is not responsible for mistakes of judgment.
You are instructed that the standard of care required of those engaging in the practice of healing arts within the State of oklahoma (sic) shall be measured by national standards."

4. Oklahoma Uniform Jury Instructions—OUJI–CIV 13.4 DUTY OF MEDICAL SPECIALIST provides:
"A physician who holds himself out to be a specialist in a particular field of medicine owes to his patient the duty of possessing and using that degree of learning and skill ordinarily possessed and used by other specialists of good standing in the same special field under similar circumstances. This is a higher degree of learning and skill than that of a general practitioner."
Instruction No. 7 provides:
"A physician who holds himself out to be a specialist in a particular field of medicine owes to his patient the duty of possessing and using that degree of learning and skill ordinarily possessed and used by other specialists of good standing in the same special field

under similar circumstances. This is a higher degree of learning and skill than that of a general practitioner."

5. *Hall v. Orthopedic Clinic*, 444 P.2d 191, 193 (Okla.1968); *City of Tulsa v. Pearson*, 277 P.2d 135, 137 (Okla.1954).

6. *Woodall v. Chandler Material Co.*, 716 P.2d 652, 654 (Okla.1986); *Reinhart & Donovan Co. v. Williamson*, 191 Okl. 539, 131 P.2d 765, 766–67 (1942).

7. Two of Reif's colleagues testified that Reif did not depart from an appropriate standard of care in treating Boyanton. This testimony does not negate the fact that the jury was not informed of the correct standard to which Reif should be held—that of a specialist.

8. See, *City of Oklahoma City v. Oklahoma Tax Comm'n*, 789 P.2d 1287, 1297 (Okla.1990) (Opala, V.C.J., dissenting).

9. The pertinent portion of the instruction provides:
"... An orthopedic specialist is required to exercise reasonable skill and care in treating a

608

some discussion of the standard to which a medical specialist will be held. However, jury instructions are not considered in the case. *Runyon* was disposed of by the trial court on a motion for summary judgment.

## CONCLUSION

This Court adopted the OUJI–CIV on December 14, 1981. The purpose of the OUJI–CIV is twofold: 1) to provide juries with clear, concise, uniform, and unbiased instructions to guide their deliberations; and 2) to increase the efficiency of trial counsel and trial courts by eliminating the need to draft and select proposed instructions on commonly encountered subjects.[10] The purposes for which the OUJI–CIV were adopted are not served when confusing and conflicting instructions are given. Because the jury could not have determined the standard to which Reif should have been held, the cause should be remanded for a new trial.

patient, which is that skill and care ordinarily used by careful and skillful orthopedic specialists."

10. *Thomas v. Gilliam*, 774 P.2d 462, 464 (Okla. 1989).