Carmen SISSON, By and Through her mother, natural guardian, and next-of-friend, Brenda ALLEN, formerly Brenda Sisson; and Brenda Allen, Individually, Appellants,

v.

Ronald C. ELKINS, M.D., Individually; Ronald C. Elkins, M.D., Inc., a corporation, Appellees.

No. 72578.

Supreme Court of Oklahoma.

Nov. 20, 1990.

As Corrected Nov. 26, 1990.

Concurring and Dissenting Opinion of Justice Kauger, Nov. 26, 1990.

As Corrected Dec. 4, 1990.

Mark Shores, Baum, Ralstin & Shores, Oklahoma City, for appellants.

John Wiggins, Short, Barnes, Wiggins, Margo & Adler, Oklahoma City, for appellees.

Kent F. Frates, Frates & Farris, Oklahoma City, amicus curiae Oklahoma State Medical Ass'n.

SUMMERS, Justice:

The jury in this medical malpractice case brought back a verdict for the defendant doctor. Plaintiff appealed, challenging only the correctness and sufficiency of the court's instructions to the jury. We conclude that the lower court correctly refused to instruct on the doctrine of *res ipsa loquitur,* and adequately instructed on the duty of care imposed upon a physician possessing a medical specialty. We affirm.

The plaintiff, Carmen Sisson, was born with a congenital heart defect which required corrective surgery to sustain her life. At seven weeks of age Carmen underwent a Raschkind procedure, the first of three corrective operations. At four she underwent her next life-sustaining surgery, a Rastelli procedure. This latter operation involves implanting an artificial Dacron graft or "conduit" which acts as a major blood vessel. Because the conduit is of a fixed size, it becomes less efficient as the child grows. It is not uncommon for the conduit to become progressively obstructed, requiring replacement.

Ten years after her Rastelli procedure, Carmen's circulatory system had regressed to the point that she was suffering dizziness and fainting spells. It became necessary that she undergo a Rastelli "redo" to replace the existing conduit. All Rastelli procedures require that the sternum, or breastbone, be cut open to expose the underlying conduit. Opening the sternum in a "redo" procedure involves more risk because the structures beneath tend to adhere to the back of the sternum as they heal from the earlier operation. Because a surgeon cannot know preoperatively the conduit's precise position, he must assume that it is adherent to the sternum, and therefore proceed with great caution as he cuts through the sternum. Tearing or cutting the conduit is a known risk in a Rastelli "redo". The defendant, Dr. Elkins, was the operating surgeon.

In opening Carmen's sternum the doctor cut into the conduit, causing a significant hemorrhage which could not be stopped by the application of pressure. Dr. Elkins completed the sternal opening and placed Sisson on partial, then total bypass. During this complication, Sisson underwent a period of approximately thirty minutes of reduced blood pressure resulting in reduced oxygen to her brain. The reduced

oxygen flow caused her to sustain permanent brain damage.

At trial, Carmen's mother claimed three specific errors in Elkins' course of action which constituted negligence: (1) the use of a reciprocating, rather than oscillating, saw in opening the sternum, (2) failure to place Carmen on bypass prior to the surgery, and (3) failure to induce cardiac arrest after the hemorrhage. The jury returned a unanimous verdict in favor of Dr. Elkins. On appeal, the plaintiff maintains that the trial court erred in refusing to give a requested *res ipsa loquitur* instruction, and in charging the jury with a duty of a non-specialist physician in a case where the defendant was clearly a specialist. The Oklahoma State Medical Association has been permitted to file its brief as *amicus curiae*.

## RES IPSA LOQUITUR

■ Plaintiff urges that the trial court erred in refusing to give a *res ipsa loquitur* instruction. The Latin phrase ("The thing speaks for itself") refers to a rule of evidence whereby in certain cases negligence of the defendant may be inferred from the mere fact that the accident happened. *Lawton Coca Cola Bottling Co. v. Shaughnessy*, 202 Okl. 610, 216 P.2d 579 (1950); *Independent Eastern Torpedo Co. v. Gage*, 206 Okl. 108, 240 P.2d 1119, 1123 (1952); *Okla. Coca–Cola Bottling Co. v. Newton*, 205 Okl. 360, 237 P.2d 627 (1951). In *St. John's Hosp. & School of Nursing v. Chapman*, 434 P.2d 160, 168 (Okla.1967), this Court first recognized that the common law doctrine of *res ipsa loquitur* may be applicable to medical malpractice cases. At common law the effect and result of the doctrine of *res ipsa loquitur* was to aid the plaintiff in making a prima facie case of negligence in circumstances where direct proof was beyond the power of the plaintiff, but within the power of the defendant. This Court was mindful that in a malpractice case, negligence should never be presumed from the mere fact that treatment

of the patient was unsuccessful. *Id.* at 166–67; *see also Hembree v. Von Keller*, 189 Okl. 439, 119 P.2d 74, 78 (1941). An instruction on *res ipsa loquitur* was given at common law only (1) in the absence of the plaintiff's having offered direct evidence of negligence, (2) where the injury was caused by something within the exclusive control of the defendant, and (3) where the event causing the injury was of a kind which ordinarily does not occur in the absence of negligence on the part of the person in the situation of the defendant. *St. John's, supra; Independant Eastern Torpedo Co. v. Gage, supra.*

■ Since *St. John's*, the doctrine of *res ipsa loquitur* has been codified for medical malpractice cases by 76 O.S.1981 § 21:

> In any action arising from negligence in the rendering of medical care, a presumption of negligence shall arise if the following foundation facts [1] are first established:
>
> 1. The plaintiff sustained injury;
> 2. Said injury was proximately caused by an instrumentality solely within the control of the defendant or defendants; and
> 3. Such injury does not ordinarily occur under the circumstances absent negligence on the part of the defendant,
>
> If any such fact, in the discretion of the court, requires a degree of knowledge or skill not possessed by the average person, then in that event such fact must be established by expert testimony.
> (Laws 1976, c. 44 § 5, eff. April 8, 1976.)

Instead of *allowing* an *inference* of negligence as the common law rule did, the statute *establishes* a *presumption* thereof. It further differs from the common law doctrine of *res ipsa loquitur*, as discussed in *St. John's*, in that the statute does not incorporate the element that plaintiff must not be in a position to show the particular circumstances which caused the injury. *See, e.g., Flick v. Crouch*, 555 P.2d 1274 (Okla.1976); *Little*, 665 P.2d at 1228. In

---

**1.** The instruction for *res ipsa loquitur* set out in OUJI–Civ. No. 9.13 specifies that the plaintiff has the burden of proof to establish the foundation facts. *See Turney v. Anspaugh*, 581 P.2d

1301 (Okla.1978); *Little v. Arbuckle Memorial Hospital Board of Control*, 665 P.2d 1227, 1229 (Okla.App.1983).

determining whether the doctrine applies in a medical malpractice case, we have held that only the three numbered foundational requirements set forth in the statute need be met. *Middlebrook v. Imler, Tenny & Kugler, M.D.'s,* 713 P.2d 572 (Okla.1985). Thus, turning to today's case, we must determine whether the three foundation facts have been established by the plaintiff's evidence so as to allow the statute to be applicable.

▇ The plaintiff's expert, Dr. R., testified to the facts that Carmen sustained injury and that the instrumentality that caused the injury was in the sole control of Dr. Elkins. Therefore, evidence of the first two foundation facts is clearly in the record. The problem is whether there was any evidence of the third—the requirement that the injury is of the type that does not ordinarily occur in the absence of negligence.

Dr. R. admitted that every surgeon who performs a Rastelli "redo" runs the risk of cutting the conduit. He testified that major bleeds can and do occur without negligence. He also testified that he would have used an oscillating saw in opening the breastbone to avoid cutting the conduit. (Dr. Elkins used a reciprocating saw.) He stated that in his opinion, the patient should have been placed on heart bypass prior to the surgery, and that Dr. Elkins was negligent in doing the surgery. Plaintiff argues that the third foundational fact can be *inferred* from this testimony. In the law of *res ipsa loquitur,* however, the doctrine cannot be invoked until the plaintiff has supplied evidence of the foundation facts. In *St. John's,* we said "An inference [of negligence under the doctrine of *res ipsa loquitor*] arises only from an established foundation fact. *The inference cannot supply the foundation fact from which it arises."* (emphasis ours) *St. John's* at 168, quoting *Emigh v. Andrews,* 164 Kan. 732, 191 P.2d 901, 903 (1948) and *National Union Fire Insurance Co. v. Elliot,* 298 P.2d 448, 451 (Okla.1956).

*At no point in his testimony did Dr. R. testify that an injury such as Carmen's does not ordinarily occur under these circumstances absent negligence on the part of the surgeon.* In fact, counsel for the plaintiff chose not to ask the question that would have produced either a "yes" or a "no" answer on that subject. The record is thus silent on the subject of the third foundation fact, and it cannot be supplied by inference. *St. John's,* supra. Refusal to instruct on issues not supported by any evidence is not error. *Skogsberg v. First Nat. Bank of Kingmon,* 439 P.2d 957 (Okla.1968); *Lewallen v. Cardwell,* 325 P.2d 1074 (Okla.1958). Because evidence of such third fact is necessary for the statutory presumption of negligence to apply, the trial court was correct in refusing to give the *res ipsa loquitur* instruction. 76 O.S.1981 § 21(3); *Middlebrook,* 713 P.2d at 578.

Defendant, although successful below, joins with *Amicus* in urging this Court to overrule *Middlebrook,* or, in the alternative, invalidate 76 O.S.1981 § 21(3) for constitutional reasons. Prior to *Middlebrook,* a question existed whether a *res ipsa loquitur* instruction could be given in a case where there was also evidence of specific acts of negligence. However, in *Middlebrook,* we found that there was no error in allowing a *res ipsa loquitur* instruction in a medical malpractice case where evidence was presented of specific negligent acts. *Id.* at 578. Reading Section 21(3) literally, we held that the doctrine would not be limited to instances where the common law of *res ipsa loquitur* would have applied, but instead held that the statute is applicable in any action where the three numbered foundation facts are met. *Id.* We do not depart from our reasoning in *Middlebrook,* and decline to overrule it. Nor do we evaluate the constitutionality of a statute, § 21(3), which was not applicable in the case and upon which the Court properly refused to instruct. We will not provide such an advisory opinion. *See Application of Fun Country Development Authority,* 566 P.2d 1167 (Okla.1977).

### INSTRUCTION ON THE DUTY OF A SPECIALIST

▇ Plaintiff's second proposition asserts that reversible error was committed

in the giving of instructions covering the duty of both a non-specialist and a specialist physician. She asserts that the giving of both instructions was contradictory and confusing, that a physician is either a specialist or a non-specialist, and that because Elkins is a cardiac specialist, the only instruction that should have been given was that pertaining to a specialist. As authority, she relies solely on *Boyanton v. Reif,* No. 68,417, slip op. (Okla.Ct.App. July 18, 1989) (unpublished opinion).

The objected to instruction, numbered by the court as "10", reads as follows:

> Unless he states or agrees otherwise, a physician employed to treat a person impliedly warrants that he possesses that degree of learning, skill, and experience ordinarily possessed by others of his profession practicing in the same field, and that he will use ordinary care in the exercise of his skill and the application of his knowledge and experience to accomplilsh the purpose for which he is employed, and the he will use his best judgment in the exercise of his skill in diagnosing the condition and in treating the patient. He does not warrant a cure and is not responsible for the lack of success unless that lack results from his failure to exercise ordinary care or from his lack of ordinary learning, skill, and experience. If he possesses ordinary learning, skill, and experience and exercises ordinary care in applying same, he is not responsible for mistakes of judgment.

It is substantially the same as Okla. Uniform Jury Instruction, Civil, No. 13.3, with the exception that the trial court here correctly excised out the "same or similar locality" clause appearing in the O.U.J.I. formbook. *See* 76 O.S.Supp.1983 § 20.1 (statute establishing national medical standards).

The instruction given here on the duty of a medical specialist, and not objected to, was patterned on O.U.J.I. No. 13.4, and was given as instruction No. 8.[2] Although

we find no prejudicial error in the *order* of the instructions given, the better practice would be to follow the "general" one immediately with the "specialist" one, the latter being to the effect that a specialist, such as the defendant here, is held to the higher duty of using the learning and skill ordinarily possessed by other similar specialists.

Initially, we note that *Boyanton* as cited lacks precedential value; it was an unpublished opinion of the Court of Appeals. *See* 20 O.S.1981 § 30.5. Further, it was vacated by this Court in our own recent opinion of *Boyanton v. Reif,* 798 P.2d 603 (Okla. 1990).

Our pronouncement in *Boyanton* is dispositive. In that medical malpractice case against a surgeon defendant, jury instructions for both medical specialist and non-specialist physicians were given, substantially identical to those given here. We found no error there. *See also Karriman v. Orthopedic Clinic,* 516 P.2d 534, 538 (Okla.1973); *Eckels v. Traverse,* 362 P.2d 680, 683 (Okla.1961). Furthermore, we noted that error could arise should both instructions not be given, because the specialist instruction is a refinement of, not an alternative to, the non-specialist instruction. While the non-specialist instruction addresses the knowledge and skill required, it does not adequately address the degree of care. *Boyanton,* 798 P.2d at 605. Considering the instructions as a whole, *see Middlebrook,* 713 P.2d at 585, we conclude that the trial court's concurrent presentation of these two instructions to the jury was not confusing and did not constitute reversible error.

■ Plaintiff also argues that Jury Instruction No. 10 is inconsistent with 76 O.S.Supp.1983 § 20.1 which holds Oklahoma physicians to a national standard of care. She asserts that Section 20.1 requires the national standard to be an objective standard, and that the given instruc-

---

**2.** Jury Instruction No. 8 stated:

A physician who holds himself out to be a specialist in a particular field of medicine owes to his patient the duty of possessing and using that degree of learning and skill ordinarily pos-

sessed and used by other specialists of good standing in the same special field under similar circumstances. This is a higher degree of learning skill than that of a general practitioner.

tion stated a subjective standard insofar as the physician is allowed to rely on his best judgment. Jury Instruction No. 10 as given states in part:

".... a physician employed to treat a person impliedly warrants ... that he will use his best judgment in the exercise of his skill in diagnosing the condition and in treating the patient.... If he possesses ordinary learning, skill and experience and exercises ordinary care in applying the same, he is not responsible for mistakes in judgment."

We find that Jury Instruction No. 10 is not inconsistent with 76 O.S.Supp.1983 § 20.1, which reads:

The standard of care required of those engaging in the practice of the healing arts within the State of Oklahoma shall be measured by national standards.

Initially we note that Section 20.1 makes no requirement of an "objective" standard. Further, the standard of care generally applied to physicians requires that the physician exercise the care, skill, and learning ordinarily exercised by other physicians under similar circumstances. *Karriman v. Orthopedic Clinic*, 516 P.2d at 540; *Standards of Care in Coronary Heart Disease*, 54 OBJ 2807; W. Prosser, *The Law of Torts*, at 162 (4th Ed.1971). This standard is plainly stated in Jury Instruction No. 10. To allow the physician to exercise his best judgment within these boundaries is not contrary to Section 20.1.

The judgment entered on the jury verdict in favor of the defendant physician is affirmed.

HARGRAVE, C.J., and HODGES, LAVENDER, SIMMS and DOOLIN, JJ., concur.

OPALA, V.C.J., concurs in judgment.

ALMA WILSON, J., concurs in part, dissents in part.

KAUGER, J., concurring in part, dissenting in part, and joining OPALA, V.C.J., in his treatment of Art. 5 § 46, Okla. Const. and 76 O.S.1981 § 21.

SIMMS, Justice, concurring:

I concur in affirming the judgment of the trial court, however, I cannot embrace the rule of *Middlebrook v. Imler, Tenny, and Kugler, M.D.'s*, Okl., 713 P.2d 572 (1985), which permits giving a res ipsa loquitur instruction when direct evidence of specific acts of negligence is presented to the jury. See, dissenting opinion, *Middlebrook*, supra, at 587.

OPALA, Vice Chief Justice, with whom KAUGER, Justice, joins *solely* for the exposition of Art. 5 § 46, Okl.Const., and of 76 O.S.1981 § 21, concurring in judgment.

Today the court affirms the trial court's judgment in a medical malpractice case on the jury verdict for the defendants, holding, *inter alia*, that the trial court correctly refused to instruct the jury on our codified version of the common law's res ipsa loquitur doctrine, which is found in 76 O.S. 1981 § 21.[1] Although I fully support the judgment's affirmance, I would not pause today to consider, as the court does, whether the plaintiffs were entitled to the requested res ipsa loquitur instruction.[2] Rather, I would assume they were and

---

**1.** The pertinent terms of 76 O.S.1981 § 21 are:
"In any action arising from negligence *in the rendering of medical care, a presumption of negligence shall arise if* the following foundation facts are first established:
"1. The plaintiff sustained any injury;
"2. Said injury was proximately caused by an instrumentality solely within the control of the defendant or defendants; and
"3. Such injury does not ordinarily occur under the circumstances absent negligence on the part of the defendant.
"* * *" (Emphasis added.)

**2.** In an opinion *promulgated but not carried to mandate,* a majority of this court, whose personnel have not changed since that pronouncement, had held that the evidentiary predicate (or "the statutorily required foundation facts") for invoking the res ipsa loquitur doctrine, which are embodied in § 21, *may be established by inference.* See *Pearson v. Presbyterian Hospital, Inc.*, 59 O.B.J. 3458, 3460–3461 (No. 65,982 December 6, 1988). The opinion was later vacated and withdrawn from publication on February 7, 1989—upon the parties' joint motion to dismiss that followed the claim's settlement.

then proceed to address the defendants' frontal attack upon the constitutionality of the § 21 variant of the common-law res ipsa loquitur doctrine. This provision was enacted for application *solely* to claims against health providers. In my view, the statutory doctrine in § 21 violates Art. 5 § 46, Okl.Const.,[3] because it governs only a *subclass* of tort litigants.

Article 5 § 46 mandates statewide procedural uniformity. It *expressly prohibits* the legislature from enacting "any local or special law ... *[r]egulating the practice ... or changing the rules of evidence in judicial proceedings....*" (Emphasis mine.) The terms of § 21 create a *presumption* of negligence against *only health care providers.* The presumption arises when the plaintiff shows that the injury was proximately caused by an instrumentality within the defendant's sole control and the harm "does not ordinarily occur under the circumstances absent negligence on the part of the defendant."[4] The statute manifests a sharp departure from the common law's parameters of res ipsa loquitur.[5] In *no other* (non-medical) negligence case would the law compel a lack of due care to be presumed. Under the common-law rule, the trier generally is permitted to infer negligence only if direct evidence of negligence is beyond the plaintiff's ability to secure but lies within the reach of the defendant.[6] Moreover, evidence of specific acts of want of due care renders the doctrine inapplicable.[7] Today's opinion distinguishes § 21 further: "Instead of *allowing* an *inference* of negligence as the common law rule did, the statute *establishes* a *presumption* thereof." (Emphasis in original.) In sum, these distinctions create a dichotomous res ipsa doctrine—one that generally governs negligence cases and the other that is limited to medical malpractice litigation.

In *Reynolds v. Porter*[8] this court held that when Art. 5 § 46, Okl. Const., is invoked to challenge a statute's validity, the only issue to be resolved is whether the enactment—addressing a subject enumerated in § 46—"*targets for different treat-*

---

3. The pertinent terms of Art. 5 § 46, Okl. Const., provide:
   "The Legislature *shall not,* except as otherwise provided in this Constitution, *pass any local or special law* authorizing:
   " * * *
   "*Regulating the practice* or jurisdiction of, *or changing the rules of evidence in judicial proceedings* or inquiry before the courts...." (Emphasis added.)

4. See 76 O.S.1981 § 21, *supra* note 1.

5. See *Middlebrook v. Imler, Tenny & Kugler M.D.'s,* Okl., 713 P.2d 572 (1986), where the court recognized that the statutory approach to the application of res ipsa loquitur in medical malpractice cases *differs* from the generally obtaining norms of common law in other tort cases. While the § 21 presumption-of-negligence standard is applicable in "any action" for medical negligence, including those in which there is evidence of specific acts of negligence, the same cannot be said of the common-law doctrine of res ipsa loquitur. (See *Middlebrook v. Imler, Tenny & Kugler M.D.'s, supra* at 587 (Simms, C.J., dissenting).) In *Middlebrook,* the constitutional validity of § 21 was not implicated. In the instant case it is directly challenged.

6. *St. John's Hospital & School of Nursing v. Chapman,* Okl., 434 P.2d 160, 166–167 (1967). Where the injury involves an instrumentality, the doctrine of res ipsa loquitur is invocable only if the plaintiff shows that the defendant had exclusive control over it. When no inanimate object is implicated,
   "it is the peculiar situation involved ... that 'speaks' and, in effect, says that negligence on the part of the defendant must have been involved in causing the injury or damage because, as a matter of common experience, in such a situation and in the ordinary course of things, the injury or damage to the plaintiff would not have occurred if the defendant had been exercising the ordinary care required in such a situation." *Chapman, supra* at 162 (the court's syllabus ¶ 2).
   Indeed, the doctrine's purpose
   "is to aid the plaintiff in such a situation to make a prima facie case of negligence ... by allowing the trier of the facts to infer negligence on the part of the defendant as a legitimate deduction of fact from the fundamental facts established by direct evidence...." *Chapman, supra* at 162 (the court's syllabus ¶ 1).
   See also *Lawton Coca–Cola Bottling Co. v. Shaughnessy,* 202 Okl. 610, 216 P.2d 579 (1950) (the court's syllabus ¶ 1).

7. *Flick v. Crouch,* Okl., 555 P.2d 1274, 1276 (1976). See also *St. John's Hospital & School of Nursing v. Chapman, supra* at 162 note 6 (the court's syllabus ¶ 4).

8. Okl., 760 P.2d 816 (1988).

*ment less than an entire class of similarly situated persons or things."* [9]  Clearly, the statutory version of res ipsa loquitur singles out medical malpractice defendants for a *special* or *different* treatment. No other negligence litigants are subject to the same evidentiary presumption found in § 21. I would today follow this court's teachings in *Reynolds* and invalidate that part of the statute which alters the elements of the common-law doctrine exclusively for medical malpractice litigation. All negligence actions must be governed by identical parameters of the common-law doctrine.

For all these reasons I would affirm the trial court's judgment.

KAUGER, Justice, (concurring in part, dissenting in part, and joining OPALA, Vice Chief Justice, in part).

I dissent for the reasons stated in the dissenting opinion in *Boyanton v. Reif,* 798 P.2d 603, 605 (Okla.1990). I also dissent because under the Okla. Const. art. 5, § 46,[1] the statute, 76 O.S.1981 § 21, is unconstitutional.[2]

---

9. *Reynolds v. Porter, supra* at 823 note 8.

1. Okla. Const. art. 5, § 46 provides in pertinent part:
   "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
   ... changing the rules of evidence in judicial proceedings or inquiry before the courts, ..."

2. Title 12 O.S.1981 § 2201(A) provides:
   "A. Judicial notice shall be taken by the court of the common law, constitutions and public statutes in force in every state, territory and jurisdiction of the United States."
   Title 76 O.S.1981 § 21 could be cured by striking "In any action arising from negligence in the rendering of medical care."